# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

KEVIN FISHER,

          Plaintiff,

vs.                9:16-CV-1175 (GTS/ATB)

SUPERINTENDENT MILLER, et al.,

          Defendants.

KEVIN FISHER, Plaintiff pro se
BRIAN W. MATULA, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

  This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants failed to properly use the metal detector to screen inmates going into the yard at Great Meadow Correctional Facility ("GMCF"), resulting in injury to plaintiff at the hands of another inmate. (Complaint ("Compl.") generally) (Dkt. No. 1). Plaintiff seeks substantial monetary relief. (Compl. ¶ 8).

  Presently before the court is defendants' motion to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10). Plaintiff has filed a response in opposition to the motion. (Dkt. No. 14). For the following reasons, this court will recommend denying the defendants' motion in part and granting it in part.

I.  **Facts**

Plaintiff alleges that on September 29, 2015, at approximately 12:50 p.m., he was in the yard at GMCF. (Compl. ¶ 6). Plaintiff had obtained a pass to leave the yard in order to get his medication. As he was leaving the yard, he walked past a group of inmates and felt someone "punch" him in the back of his head. (*Id.*) Plaintiff alleges that he kept walking, and when he was inside the building, showing his pass to a sergeant, the officer asked plaintiff what happened to him. The sergeant told plaintiff to face the wall and noticed that plaintiff was bleeding. He asked plaintiff who cut him, but plaintiff stated that he did not know. (*Id.*) Plaintiff was taken to the medical department where it was determined that plaintiff had suffered a four inch cut on the back of his head and a one eighth inch cut on his right ear, which required a total of twelve stitches. (*Id.*)

The complaint contains six "Causes of Action ("COAs")," but essentially, plaintiff claims that the defendants - Superintendent Miller and Superintendent of Security Eastman - failed to see that the metal detector outside the yard was properly used, which allowed inmates to bring weapons into the yard. (Compl. ¶ 7). The COAs also contain additional facts.[1] (*Id.*) Plaintiff alleges that the defendants created a "foreseeable" risk, and were deliberately indifferent to that risk, because they were

---

[1] As is the case in many pro se pleadings, the plaintiff may confuse causes of action with factual statements in support of the causes of action. The court must read plaintiff's pleadings liberally to raise the strongest arguments they suggest, including reading the causes of action to determine whether additional facts are stated therein which may support plaintiff's ultimate claims. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

2

aware that not all of the inmates were being screened through the metal detector prior to entering the yard, and they did nothing to stop this conduct by their subordinates. (COAs #1-3). Plaintiff's fourth COA includes the additional facts that the "evening" inmates are all made to go through the metal detector, while the morning and the noon groups are not all screened. (COA #4). Plaintiff implies that this shows that defendants are aware of the risk that inmates will carry weapons into the yard if they are not properly screened. The fifth COA repeats the allegation of defendants' deliberate indifference. (COA #5). Finally, plaintiff claims that defendants attempted to cover up their "negligence" by claiming that plaintiff was in a physical altercation with another inmate, but found him "not guilty" of fighting, and instead placed him in Protective Custody. (Compl. COA No. 6).

## II. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the

non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of

record in prior litigation between the same parties).

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing

5

suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S.

6

Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2.

B.  **Application**

Defendants argue that plaintiff has failed to exhaust his administrative remedies in this case. Defendants argue that, although plaintiff filed a grievance and appealed that grievance to the CORC, plaintiff never referenced metal detectors at all. (Dkt. No. 10-3 at 4). Defendants argue that the grievance may be read only to allege that "the officers on duty failed in their detection of the weapon that was used to injure plaintiff." (*Id.*) They state that "[w]hile plaintiff has filed a grievance concerning the assault, it was not a grievance about what he is now claiming in litigation. Thus, the issue in this case is whether plaintiff gave the defendants "notice" in his grievance of the issue that he is currently raising in his federal complaint.

In support of their motion, defendants submit plaintiff's initial grievance. (Dkt.

7

No. 10-2, Ex. A). Plaintiff has responded to defendants' motion and has included the documents denying his grievance and his subsequent appeals. (Dkt. No. 14). This court will consider the documents submitted by both parties.[2]

The denial of plaintiff's initial grievance states that all inmates are "passed through the frisker[3] and subjected to random pat frisks." (Dkt. No. 14 at CM/ECF p.5). The IGRC response admitted that this may not be a "perfect system," but it did deter inmates from smuggling weapons into the yard. (*Id.*) The IGRC response also noted that more restrictive ways to prevent inmate fights included a "24-hour lock down," which was likely unconstitutional and thus, not a satisfactory option. (*Id.*)

---

[2] As a threshold matter, the court must address defendants' attachment of matters outside the pleadings on their motion to dismiss, without even addressing the propriety of doing so. Rule 12(b) gives the court two options when matters outside the pleadings are presented on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Avgerinos v. Palmyra-Macedon Central Sch. Dist.*, 600 F. Supp. 2d 115, 123 (W.D.N.Y. 2010) (citing inter alia Fed. R. Civ. P. 12(b); *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991)). The court has the discretion to either exclude the additional materials and decide the motion on the complaint alone, or it may convert the motion to one for summary judgment. *Id.* (citations omitted). However, the mere attachment of exhibits is not always sufficient to require conversion to summary judgment. *Id.* (citing *Salichs v. Tortorelli*, No. 01 Civ. 7288, 2004 WL 602784 at *1 (S.D.N.Y. 2004)). As stated above, the court may consider documents incorporated by reference into the complaint, and even if the document is not incorporated into the complaint, the court may still consider it without converting to a motion for summary judgment if the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* (citations omitted). In addition, the court may also consider document that are in plaintiff's possession or that plaintiff knew of and relied on in bringing the suit. *Id.* (citing inter alia *V Tech Holings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001). This case involves the latter situation. Defendants submitted plaintiff's original grievance. In response, plaintiff has submitted the rest of his grievance appeal documents. (Dkt. No. 14). Plaintiff was clearly in possession of these documents and would not be prejudiced by the courts consideration of them in its analysis. In fact, plaintiff's submission has worked to his benefit. Thus, regardless of the defendants' error in submitting additional materials in support of their motion to dismiss, this court will not order conversion of the motion to one for summary judgment.

[3] The court assumes that the "frisker" is the metal detector because the CORC refers only to inmates passing through the "metal detector."

8

Plaintiff appealed the IGRC denial, and the Superintendent's response was similar to that of the IGRC. In addition, the Superintendent's response noted that plaintiff was placed in protective custody for his own safety as a result of the incident. (*Id.* at 6). Plaintiff's appeal of the Superintendent's response specifically states that "all inmates are not . . . pass [sic] through the frisker only the first four companys [sic], so . . . the rest go right by it without being frisk [sic]." (*Id.*) This statement indicates that plaintiff *did* raise the failure of facility staff to send everyone though the "frisker," which is the same claim that he is attempting to bring in this lawsuit.

Plaintiff appealed the Superintendent's decision, and the CORC affirmed the denial. In its decision, the CORC noted that plaintiff was involved in a documented "Unusual Incident" on September 29, 2015 when he was "observed fighting with another inmate." (*Id.* at 7). The CORC stated that plaintiff was given medical treatment for his head and his ear. In addition to noting that plaintiff was placed in protective custody, the CORC also stated that the facility investigation showed that "inmates are run through the metal detector and subject to random pat frisks when entering the yard." (*Id.*) Finally, the CORC stated that it found "insufficient evidence of malfeasance by staff" and advised plaintiff to "address safety and security matters to area supervisory staff at the time of the incident for any remedial action warranted." (*Id.*) Thus, contrary to defendants' argument, it appears that plaintiff did raise the issue of the defendants' failure to send all the inmates through the metal detector prior to entering the yard, even though the specific issue was not raised until plaintiff's appeal to the CORC.

An inmate need not identify all persons who are allegedly responsible for the acts giving rise to his constitutional claims. *Messa v. Woods*, No. 9:07-CV-306, 2009 WL 3076120, at *7 (N.D.N.Y. Sept. 23, 2009) (citing *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009)). However, "[a] grievance . . . must place the defendants on notice of what, substantively, is claimed in order to permit a proper investigation." *Id.* (citing *Johnson*, 380 F.3d at 697). It appears clear from plaintiff's appeal to the CORC that he was attempting to allege that not all the inmates were made to pass through the metal detector before they went into the yard. Thus, the CORC had sufficient notice to investigate the issue, and the language of the CORC response, denying that there was any proof of staff "malfeasance," arguably implies that they considered plaintiff's claim that the staff was not following proper safety procedures. The court finds that plaintiff's argument to the CORC was sufficient to exhaust plaintiff's administrative remedies with respect to the issue that he is raising in this action, particularly for purposes of a motion to dismiss.

## IV. Failure to Protect

### A. Legal Standards

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts

from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

    B.  **Application**

Defendants argue that plaintiff has failed to state a constitutional claim for failure to protect, in part, because there is no indication that if inmates had been made to walk through the metal detector on the day in question, it would have prevented plaintiff's injury because there is no proof that plaintiff was injured by a metal weapon. Defendants cite *Emile v. Johnson*, No. 04-974, 2008 U.S. Dist. LEXIS 121010 (W.D. Pa. July 29, 2008) (Rep't-Rec.) in support of their argument that the court should dismiss this action for failure to state a claim. First, the court notes that defendants are citing to a 2008 Report-Recommendation by a Magistrate Judge in Pennsylvania, with no indication that the recommendation was adopted. Second, *Emile v. Johnson* was decided after a motion for summary judgment. The court in *Emile* stated that in order to assert a claim under the theory of failure to protect, the plaintiff would have to show that there were numerous other inmate on inmate attacks in the yard using metal weapons, and that these attacks posed a substantial risk of serious harm to inmates, that the defendants knew of the attacks, and despite this knowledge, failed to take steps to reduce the risk. *Id.* at *14-15.

Defendants argue that "[a]s in *Emile*, there is no "allegation" that there was any widespread danger of inmates fighting with metal objects and no allegation of the weapon that was used to injure the plaintiff. (Dkt. No. 10-3 at 7). Although plaintiff's complaint is inartfully written, his response to defendants' motion to dismiss states that

11

he did suffer "a razor slash wound," and that he plans on showing through discovery that "there is quite a frequency of cuttings in Great Meadow Correctional Facility Yard." (Dkt. No. 14 at ¶¶ 5, 7). In resolving a motion to dismiss, it is appropriate for the court to consider allegations contained in plaintiff's opposition. *See Samuels v. Fischer*, 168 F. Supp. 2d 625, 645 (S.D.N.Y. 2016) (citing inter alia *Anderson v. Buie*, No. 12-CV-6039, 2015 WL 9460146, at *13 (W.D.N.Y. Dec. 23, 2015) (liberally construing the pro se plaintiff's submissions to consider a document referred to repeatedly in opposition to motion to dismiss); *Elliott v. Nestle Waters N. Am. Inc.*, No. 13-CV-6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (considering, among other things, an exhibit attached to an opposition brief in part "in light of the policy permitting courts to consider facts alleged for the first time in a pro se plaintiff's opposition to a motion to dismiss")).

As stated above, *Emile* was decided after a motion for summary judgment, in which the defendants asserted that "neither defendant had any knowledge of pervasive fighting with weapons, instead, they believed that they were isolated incidents, not more than one or two in a year. *Emile*, 2008 U.S. Dist. LEXIS 121010 at *6. Clearly, in *Emile*, there was a great deal more information for the court to consider than exists in this case. It is difficult to imagine how this plaintiff would have access to this type of information without some discovery or without defendants filing a properly supported motion for summary judgment in which they could submit affidavits or other evidence supporting their position as the defendants did in *Emile*.

In *Warren v. Goord* ("*Warren I*"), 476 F. Supp. 2d 407 (S.D.N.Y. 2007), plaintiff

12

alleged that the installation of metal detectors at the entrance of the recreation yard at Green Haven Correctional Facility would have significantly reduced the risk of inmates being assaulted by other inmates. Plaintiff claimed that the defendants exhibited deliberate indifference by failing to take action despite their knowledge that violent acts were occurring in the prison yard. *Id*. at 411. Plaintiff Warren claimed that he was the victim of a violent attack, and that the defendants – the Superintendent of Green Haven and the Commissioner of the Department of Corrections and Community Supervision ("DOCCS")[4] – were "aware that assaults and stabbings regularly took place in the prison yards. *Id*. Defendants moved to dismiss for failure to state a claim, and the court denied the motion, stating that, "if plaintiff's allegations are true, the defendants' alleged tolerance for weapons in the yard and resulting inmate attacks may rise to the level of disregarding a substantial and pervasive risk of violence." *Id.* (citing *Liles v. Camden County Dep't of Corr.*, 225 F. Supp. 2d 450, 463 (D.N.J. 2002)). The court denied the defendants' motion, notwithstanding defendants' citation of cases in which such claims were dismissed. *Id.* at 411-12. The court in *Warren I* distinguished cases in which the plaintiff focused on the "general danger" to the prison population, with Warren's claim that "the existence of weapons in the prison yard constituted a specific risk to his being wounded." *Id.* (distinguishing inter alia *Melo v. Combes*, No. 97 Civ. 204, 1998 WL 67667, at *5 (S.D.N.Y. Feb. 18, 1998)). Plaintiff in this action alleges that the existence of weapons in the yard constituted a specific risk to him.

      Plaintiff Warren's claim was ultimately dismissed after a summary judgment

---

[4] Formerly the Department of Correctional Services ("DOCS").

13

motion, but only after some discovery and additional information for the court to consider. The court stated that the plaintiff had offered no evidence to indicate that the defendants failed to take "reasonable measures" to address the risk that inmates would carry weapons into the yard. *Warren v. Goord ("Warren II")*, 579 F. Supp. 2d 488, 496-97 (S.D.N.Y. 2008). In addition, the defendants asserted that they had other security measures in place to address such dangers, and plaintiff produced no evidence suggesting that the defendants' chosen methods were unreasonable. *Id.* at 497.

The court in *Warren II* concluded that no reasonable fact finder could conclude "on this record," that defendants disregarded an excessive risk to plaintiff's safety by failing to adopt plaintiff's proposed security measures. *Id.* The court also noted that, as the defendants pointed out, inmates could "and do" commit assaults with non metal weapons and with their bodies or had other ways of getting weapons into the yard or any other part of the facility. *Id.*

This case is very similar to *Warren I*, and the court finds that more information is necessary in order to make a proper determination. On a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but whether he should be allowed to present evidence in support of his claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 564 n.11; *City of New York v. Fedex Ground Pkg. Syst.*, 175 F. Supp. 3d 351, 359 (S.D.N.Y. 2016) (citations omitted)..

In *Hannah v. Vanguilder*, plaintiff claimed that, although the facility had a metal detector, on weekends, and during periods when the facility was understaffed, the metal detector was not used, in favor of "random pat frisks." *Hannah v. Vanguilder*, No. 9:08-

CV-441, 2010 WL 1372385, at *1 (N.D.N.Y. Feb. 11, 2010). Plaintiff was attacked in the yard, resulting in an injury requiring thirty-two stitches. *Id.* at *2. The court dismissed the action after defendants moved for summary judgment, stating that "Hannah's claims that, because a violent attack occurred in the recreation area defendants should always have been using the metal detectors is unavailing." *Id.* at *7 (citing *Warren I*, 476 F. Supp. 2d at 411). However, in citing *Warren I*, the court in *Hannah* noted that "summary judgment would have been avoided if the inmate had made "specific allegations as to the level and type of violence in the yard and whether it was serious and similar enough to put defendants on notice of the substantial risk of danger." *Id.*

In *Hannah*, the plaintiff had failed to proffer evidence, other than conclusory and general allegations that other similar slashings occurred in the area in question. *Id.* The court found that such statements were "insufficient to survive a motion for summary judgment." *Id.* (citing *Warren I*). In addition, the defendants in *Hannah* provided the court with substantial information regarding the fights that had taken place in the recreation yard as well as providing information about other methods that were used for preventing weapons from being smuggled into the area. *Id.* The court concluded that "at best," Hannah was asserting that defendants were "negligent" in failing to always use the metal detectors. *Id.* Allegations of negligence are insufficient to state a constitutional claim. *Id.* (citing *Matthews v. Armitage*, 36 F. Supp. 2d 121, 126 (N.D.N.Y. 1999)). *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983).

15

In this case, to the extent that plaintiff alleges negligence, his claims may be dismissed. However, as stated above, in his response to defendants' motion to dismiss, plaintiff alleges that "[t]hrough Discovery the plaintiff will show that there is quite a frequency of cuttings in Great Meadow Correctional Facility Yard, . . . showing a risk of grave danger to inmates." (Dkt. No. 14 at 3). Plaintiff also claims that defendants Miller and Eastman were "aware that assaults and cuttings regularly took place in the Prison yard . . . ." (*Id.*) While the ultimate resolution of plaintiff's claim is far from clear, at this stage of the case, with no discovery, and taking into account the requirement that the court accept plaintiff's allegations as true, this court will not recommend dismissing the action based on the complaint alone. Plaintiff should have the opportunity for some discovery. The court makes no finding regarding whether plaintiff's claim would survive a properly supported motion for summary judgment.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss be **GRANTED IN PART**, and that to the extent that the complaint may be read as raising a **NEGLIGENCE** claim, the claim may be **DISMISSED** as against both defendants, and it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 10) be **DENIED IN ALL OTHER RESPECTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 11, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge